IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–02352–EWN–MEH

GRYNBERG PETROLEUM COMPANY,

    Plaintiff,

v.

EVERGREEN ENERGY PARTNERS, LLC,
DAVID M. REAVIS, and
JOHN DOES 1-10,

    Defendants.

---

### ORDER AND MEMORANDUM OF DECISION

---

This is a contract case. Plaintiff Grynberg Petroleum Company brings suit against Defendant Evergreen Energy Partners, LLC ("Defendant Evergreen"), Defendant David M. Reavis ("Defendant Reavis"), and John Doe Defendants, alleging Defendants failed to satisfy various contractual obligations relating to a natural gas deposit. This matter is before the court on "Defendant Evergreen Energy Partners, LLC's Motion to Dismiss," filed November 22, 2006. Jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332.

### FACTS

*1.   Procedural History*

On or about September 18, 2006, Plaintiff filed this action in state court in Denver, Colorado. (Notice of Removal, Ex. A [Compl.] [filed Nov. 11, 2006] [hereinafter "Notice of

Removal"].)[1] Plaintiff alleged two claims for breach of contract: (1) breach of a January 24, 1980 Seismic Option and Farmout Agreement (the "Farmout Agreement") between Plaintiff and the Superior Oil Company ("Superior Oil"); and (2) breach of a related Operating Agreement between the same parties. (*See* Compl. ¶ 5, Ex. A [Farmout Agreement].) Plaintiff alleges that Defendants, as successors-in-interest to the rights of Superior Oil under both agreements, breached the agreements by failing to develop the underlying properties, refusing to reimburse Plaintiff for rentals and shut-in royalties, and by failing to obtain production from an underlying natural gas well. (*Id.* at 1–2.) Plaintiff asserts it is entitled to: (1) terminate both agreements; and (2) receive reimbursement and interest on rentals, shut-in royalties, and other costs it incurred in fulfilling its obligations under the agreements. (*Id.* ¶¶ 16, 20.)

On November 22, 2006, Defendant Evergreen removed the action to this court. (Notice of Removal.) On the same day, Defendant Evergreen filed a motion to dismiss, arguing: (1) the court lacks personal jurisdiction over Defendant Evergreen; and (2) as neither Plaintiff nor Defendant Evergreen are parties to the Farmout Agreement, the complaint fails to state a claim. (Def. Evergreen Energy Partners, LLC's Mot. to Dismiss [filed Nov. 22, 2006] [hereinafter "Def. Evergreen's Br."].) On December 1, 2006, Defendant Reavis joined in removal of the case and the motion to dismiss, arguing: (1) the court lacks personal jurisdiction over Defendant Reavis; and (2) no contract exists between Plaintiff and Defendant Reavis. (Def. David M. Reavis's Joinder in Removal, Rule 12[b][2] Mot. to Dismiss for Lack of Personal Jurisdiction, and Rule

---

[1]For the sake of clarity, the court will hereinafter cite to the complaint as a separate document rather than an exhibit attached to the notice of removal.

12[b][6] Mot. to Dismiss for Failure to State a Claim [filed Dec. 1, 2006] [hereinafter "Def. Reavis' Br."].)  On December 12, 2006, Plaintiff filed a combined response.  (Pl.'s Combined Resp. to Defs.' [sic] Evergreen Energy Partners, LLC's and David M. Reavis' Mots. to Dismiss [filed Dec. 12, 2006] [hereinafter "Pl.'s Resp."].)  On December 27, 2006, Defendant Reavis replied.  (Def. David M. Reavis' Reply to Pl.'s Resp. to Reavis' Rule 12[b][2] Mot. to Dismiss for Lack of Personal Jurisdiction and Rule 12[b][6] Mot. to Dismiss for Failure to State a Claim [filed Dec. 27, 2006] [hereinafter "Def. Reavis' Reply"].)  On January 11, 2007, Defendant Evergreen filed its reply.  (Def. Evergreen Energy Partners, LLC's Reply to Pl.'s Resp. to Mot. to Dismiss [filed Jan. 11, 2007] [hereinafter "Def. Evergreen's Reply"].)  This matter is fully briefed.

On March 30, 2007, Defendant Reavis filed a motion requesting that the court hold oral argument on the motion to dismiss.  (Def. David M. Reavis' Mot. for Oral Argument on His Rule 12[b][2] Mot. to Dismiss for Lack of Personal Jurisdiction, and Rule 12[b][6] Mot. to Dismiss for Failure to State a Claim [filed Mar. 30, 2007].)  On April 5, 2007, Plaintiff responded.  (Pl.'s Opp'n to Def. David M. Reavis' Mot. for Oral Argument [filed Apr. 5, 2007].)  A reply has yet to be filed.

## 2. *Factual Background*

The following facts are taken from Plaintiff's complaint and the parties' affidavit submissions in connection with the motion to dismiss.  Although the court is required to construe conflicting affidavits in Plaintiff's favor, *see Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995), I present conflicting affidavit accounts to the extent necessary to frame the parties' legal arguments.

### *a.     General Jurisdictional Facts and Allegations*

Plaintiff is an oil and gas company that maintains its principal place of business in Greenwood Village, Colorado. (Compl. ¶ 1.) Defendant Evergreen is an energy company that maintains its principal place of business in Houston, Texas. (*Id.* ¶ 2.) Defendant Reavis is an individual who resides in Portland, Texas. (*Id.* ¶ 3.)

Defendant Evergreen does not, and never has, maintained an office in Colorado, nor has it ever had employees in Colorado. (Def. Evergreen's Reply, Ex. 4 ¶ 4 [Kornegay Aff.].) Defendant Evergreen is not registered with the Colorado Secretary of State's office, nor has it ever applied to conduct business in Colorado. (*Id.*, Ex. 4 ¶ 3 [Kornegay Aff.].) Defendant Evergreen neither owns property nor holds leases in Colorado. (*Id.*, Ex. 4 ¶ 5 [Kornegay Aff.].) Defendant Evergreen does not advertise in Colorado. (*Id.*, Ex. 4 ¶ 6 [Kornegay Aff.].)

Defendant Reavis has never resided in Colorado. (Def. Reavis' Reply, Ex. A ¶ 3 [Reavis Aff.].) Defendant Reavis has never: (1) had a telephone listing or mailing address in Colorado; or (2) had any bank accounts in Colorado. (*Id.*, Ex. A ¶¶ 5, 6 [Reavis Aff.].) In the past ten years, Defendant Reavis has not: (1) appointed a Colorado resident agent for service of process; (2) conducted any business in Colorado; (3) owned, leased, rented, operated, or maintained any real property in Colorado; or (4) owned any tangible personal property in Colorado. (*Id.*, Ex. A ¶¶ 4, 8–10 [Reavis Aff.].)

### *b.*     *Facts and Allegations Relating to the Farmout Agreement*

The Farmout Agreement was negotiated and signed in Denver, Colorado in 1980. (Compl. ¶ 5; Pl.'s Resp., Ex. A ¶ 2 [Grynberg Aff.].) The Farmout Agreement is an agreement "by and between THE SUPERIOR OIL COMPANY. . . and CELESTE C. GRYNBERG."[2] (Compl., Ex. A at 1 [Farmout Agreement].) At the time the agreement was executed, both parties were Colorado residents. (*Id.*) In the Farmout Agreement, Plaintiff and Superior Oil allocated certain rights and responsibilities relating to twenty-five federal oil and gas leases. (*Id.* ¶¶ 7–8; Pl.'s Resp., Ex. A ¶ 3 [Grynberg Aff.].) Twenty-two of the leases are located in Utah, and the other three are in Colorado. (*Id.*, Ex. A ¶ 3 [Grynberg Aff.].) Plaintiff neglects to state the location of the lease at issue in this case. (*See* Compl.; Pl.'s Resp.)

According to Plaintiff, Defendants are the successors-in-interest of Superior Oil's rights in the Farmout Agreement. (Compl. ¶ 5.) Plaintiff asserts: "The chain of title and ownership of the . . . Farmout Agreement is as follows: Superior Oil Company was purchased by Mobil. After a series of consolidations, the interests were transferred to Defendant Reavis, who in turn transferred them to Defendant Evergreen." (Pl.'s Resp., Ex. A ¶ 4 [Grynberg Aff.].)

---

[2]Plaintiff asserts: "Celeste Grynberg was doing business on behalf of [Plaintiff] and was not an entity distinct from [Plaintiff]." (Pl.'s Resp. at 9.) Because it matters not for the purposes of this order, the court will assume that Plaintiff is correct. However, in the interest of creating a thorough and complete record, the court notes that: (1) the Farmout Agreement never mentions Plaintiff's name; and (2), interestingly, Ms. Grynberg appears to have first reserved Plaintiff's name with the Colorado Secretary of State on November 22, 2006, which is the very day that Defendant Evergreen filed its motion to dismiss, contending, *inter alia*, that Plaintiff is not the real party in interest in this case. (*See* Compl., Ex. A [Farmout Agreement]; Def. Evergreen's Reply, Ex. 1 [11/22/06 Statement of Reservation of Name].) Perhaps the next court to address this case will take interest in these facts.

Defendants dispute this version of the facts. Defendant Reavis admits he once succeeded to some rights and obligations under the Farmout Agreement, but he disputes Plaintiff's alleged chain of title and asserts that he conveyed no interest to Defendant Evergreen. (Def. Evergreen's Reply, Ex. 5 ¶ 5 [Reavis Aff.].) Similarly, Defendant Evergreen's president asserts that it "was not assigned, and never has had, any interest in the Farmout Agreement." (*Id.*, Ex. 4 ¶ 9 [Kornegay Aff.].)

Defendant Reavis admits that in 2002 he purchased an interest in one of the leases listed in the Farmout Agreement from a Delaware corporation, AEC Oil and Gas (USA) Inc. (Def. Reavis' Reply, Ex. A ¶¶ 13–14 [Reavis Aff.].) The land described in the lease is located in Utah. (*Id.*) Defendant Reavis asserts that on April 11, 2006, he conveyed his interest to Crown Financial Oil and Gas, LLC ("Crown"), Diamondback Oil Partners, LLP, and SEP Montezuma Creek, LLC. (Def. Evergreen's Reply, Ex. 5 ¶ 4 [Reavis Aff.].) Defendant Reavis has never owned an interest in any of the three Farmout Agreement leases located in Colorado. (Def. Reavis' Reply, Ex. A ¶ 12 [Reavis Aff.].)

Defendant Evergreen's president, Gary Kornegay, asserts that he and a colleague, Paul Hendershott, met with Plaintiff's representative, Jack Grynberg, in May 2006 in their capacity as representatives of Crown — not Defendant Evergreen. (Def. Evergreen's Reply, Ex. 4 ¶ 7 [Kornegay Aff.].) This meeting took place in Colorado. (*Id.*) Mr. Kornegay asserts that he and his colleague were conducting due diligence on behalf of Crown in connection with a potential purchase of some interests owned by Defendant Reavis. (*Id.*) Mr. Kornegay asserts: "There was no negotiation concerning the Farmout Agreement or otherwise." (*Id.*)

Mr. Grynberg agrees that he met with Messrs. Kornegay and Hendershott in May 2006. (Pl.'s Resp., Ex. A ¶ 5 [Grynberg Aff.].) Plaintiff asserts that in the meeting they negotiated "the amount which [sic] [Defendant] Evergreen would have to recover before [Plaintiff's] backin [sic] interest under the [] Farmout Agreement would convert to an after payout working interest." (*Id.*, Ex. A ¶ 4 [Grynberg Aff.].) The negotiations failed to yield an agreement. (*Id.*)

## ANALYSIS

### *1.   Legal Standard*

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. (Def. Evergreen's Br.; Def. Reavis' Br.)  A court without jurisdiction over the parties cannot render a valid judgment, so I must first consider whether this court has personal jurisdiction over Defendants. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1090 (10th Cir. 1998). Because I find below that this court lacks personal jurisdiction over Defendants, I do not reach the question whether Plaintiff's complaint states a valid claim.

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2) (2007).  A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (citing *OMI Holdings*, 149 F.3d at 1091).  Plaintiffs have "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).  The

allegations in a plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by the defendant's affidavits.'" *Wenz*, 55 F.3d at 1505 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 [10th Cir. 1992]). If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *Id.* However, only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

Neither named Defendant in the instant case is a resident of Colorado. A court obtains jurisdiction over a nonresident defendant in a diversity action if a plaintiff can establish that: (1) jurisdiction is proper under the laws of the forum state; and (2) the exercise of jurisdiction does not offend due process. *Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001). The Colorado long-arm statute provides for the exercise of personal jurisdiction over nonresidents who transact business in Colorado. Colo. Rev. Stat. § 13–1–124(1)(a) (2006). In enacting this statute, the Colorado General Assembly "intended to extend the jurisdiction of [Colorado] courts to the fullest extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution." *Jenner & Block v. Dist. Court of Denver*, 590 P.2d 964, 965 (Colo. 1979). Accordingly, the personal jurisdiction inquiry under Colorado law collapses into the traditional due process inquiry. *See Doering*, 259 F.3d at 1210.

Consistent with due process, a court may exercise personal jurisdiction over a nonresident defendant if minimum contacts exist between the defendant and the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (citations and quotation marks omitted). The minimum contacts standard may be met in either of two ways:

(1) a court may exercise "general jurisdiction" where the defendant's contacts with the forum state are continuous and systematic; or (2) a court may exercise "specific jurisdiction" where the defendant purposefully directs activities at residents of the forum *and* the litigation results from alleged injuries that arise out of or relate to those activities. *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996).

To elaborate, general jurisdiction is premised on a defendant's conduct and connection with the forum state such that it should "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Such jurisdiction thus "arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). It is essential that there be some act by which the defendant "purposefully avails" itself of the privilege of conducting activities within the forum state. *Id.*

In contrast, specific jurisdiction may arise if a defendant has "purposefully directed" its activities toward the forum state and if the lawsuit is based upon injuries that "arise out of" or "relate to" the defendant's contact with the state. *Burger King*, 471 U.S. at 472. The rationale is to give "'fair warning that a particular activity may subject [a party] to the jurisdiction of a foreign sovereign.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 [1977]).

*2.     Evaluation of Claims*

While Plaintiff does not squarely state as much, it appears to assert that this court has specific — rather than general — jurisdiction over Defendants Evergreen and Reavis.[3] (*See* Pl.'s Resp. at 6.) Admitting that neither Defendant Evergreen nor Defendant Reavis was a party to the 1980 Farmout Agreement, Plaintiff nevertheless emphasizes the fact that the agreement was negotiated and executed in Colorado between Colorado residents. (*Id.*) Plaintiff then notes that three of the leases covered by the Farmout Agreement are located in Colorado. (*Id.*) Next, Plaintiff cites to *Rogers v. 5-Star Management*, 946 F. Supp. 907, 913 (D. N.M. 1996) for the sensible proposition that a "[c]ourt should determine its personal jurisdiction over an assignee independently of its personal jurisdiction over the assignor." (*Id.* at 6–7.) Plaintiff then proceeds to assert:

> [A]fter Superior was purchased by Mobil, Superior's interests in the Farmout Agreement were transferred to Defendant Reavis. [Defendant] Reavis then transferred his interests in the Farmout Agreement to [Defendant] Evergreen. Both [Defendants], therefore, accepted both the benefits and obligations of the Farmout Agreement, which had a substantial connection to the [s]tate of Colorado.

(*Id.* at 7 [citations omitted].) Plaintiff neglects to elaborate the precise contours of this so-called "substantial connection." (*See id.*) Instead, Plaintiff concludes that "[a]s assignees of the Farmout Agreement, [Defendants] knowingly assumed obligations in connection with real

---

[3]Were Plaintiff to argue otherwise, I would flatly reject such a line of argument as factually untenable. Nothing in the complaint or the record before the court suggests that either Defendant had "continuous and systematic contacts" with Colorado. *See Hall*, 466 U.S. at 416.

-10-

property in Colorado." (*Id.*) Plaintiff neglects to explain the nature of the obligations Defendants "knowingly assumed." (*See id.*)

Defendants strenuously oppose Plaintiff's assertions. Defendant Reavis emphasizes the fact that he only purchased operating rights in Utah land, asserting that such a purchase did not impute to him any Colorado contacts that might have applied to Superior Oil. (Def. Reavis' Reply at 4.) Defendant Evergreen asserts that: (1) it does not now nor has it ever held any rights in the Farmout Agreement or properties subject thereto; and (2) the fact that it met with Mr. Grynberg in Denver in its capacity as an agent for Crown is insufficient to support specific jurisdiction.[4] (Def. Evergreen's Reply at 13–14.)

First, the court reiterates its duty with respect to the parties' affidavits: where the parties present conflicting affidavits, the court must resolve all factual disputes in Plaintiff's favor. *Wenz*, 55 F.3d at 1505. Thus, although Defendants' affidavits suggest otherwise, I must accept Mr. Grynberg's affidavit assertions that: (1) Defendant Reavis transferred his interests in the Farmout

---

[4] Defendant Evergreen also contends that Mr. Grynberg's affidavit should be stricken because it fails to "attest to personal knowledge." (Def. Evergreen's Reply at 13.) This argument is so brazenly frivolous and poorly executed that it cannot merely be overlooked. Mr. Grynberg's affidavit states that he "is manager of [Plaintiff] and conducts business . . . under [Plaintiff's] name . . . ." (Pl.'s Resp., Ex. A ¶ 2 [Grynberg Aff.].) Although Defendant Evergreen is unwilling to infer personal knowledge from this statement, the court is not so obstinate. Moreover, the court notes that if an affidavit lacking an affirmative "attestation of personal knowledge" truly must be stricken, then the court would be required to strike Mr. Kornegay's affidavit because it too lacks such an attestation. (*Compare* Def. Evergreen's Reply, Ex. 5 ¶ 2 [Reavis Aff.] [attesting that "[e]ach statement within this affidavit is within my personal knowledge"], *with id.*, Ex. 4 [Kornegay Aff.] [neglecting to make such an attestation].) If defense counsel wish to waste the court's time arguing for the application of draconian standards, the very least they could do is assure that their own submissions pass muster under such standards. I admonish counsels' sloppiness and poor judgment.

Agreement to Defendant Evergreen; and (2) Defendant Evergreen's representatives traveled to Colorado in May 2006 to negotiate aspects of the Farmout Agreement relating to those transferred interests. (*Compare* Pl.'s Resp., Ex. A ¶¶ 4–5 [Grynberg Aff.], *with* Def. Evergreen's Reply, Ex. 5 ¶ 4 [Reavis Aff.], Ex. 4 ¶¶ 7–9 [Kornegay Aff.].)

Even with these facts working in its favor, however, I find that Plaintiff has failed to make a *prima facie* showing sufficient to support specific jurisdiction. With respect to both Defendants, the mere fact that they purchased a partial interest in the 1980 Farmout Agreement, which was signed in Colorado by Colorado parties, does not support specific jurisdiction. *See Rogers*, 946 F. Supp. at 913 (stating that a "[c]ourt should determine its personal jurisdiction over an assignee independently of its personal jurisdiction over the assignor"). Plaintiff does not allege that Defendants negotiated or acquired their respective interests in the Farmout Agreement in Colorado.

Moreover, although Plaintiff attempts to tiptoe around the fact, Plaintiff does not dispute that the interests in the Farmout Agreement that Defendants acquired relate to land in *Utah*, not Colorado. (*See* Def. Evergreen's Br. at 2 ["The real property at issue in this matter is located within the state of Utah."]; Def. Reavis' Reply at 5 [same], Ex. A ¶ 13 [Reavis Aff.] [same].) Thus, Plaintiff has no choice but to make the tenuous assertion that because three of the twenty-five leases in Farmout Agreement were located in Colorado, personal jurisdiction in Colorado is appropriate. I emphatically disagree. Interests in the Farmout Agreement have long since been parceled out to a variety of parties with no connection to Colorado — and Defendants purchased only a partial interest in the Farmout Agreement relating to land in Utah. Defendants cannot be

said to have "purposely directed" their activities at Colorado by purchasing an interest that is wholly unrelated to those aspects of the agreement relating to Colorado. *See Burger King*, 471 U.S. at 472; *cf. Dwyer v. Dist. Court*, 532 P.2d 725 (Colo. 1975) (finding specific jurisdiction where nonresident defendant [1] entered into contract to purchase Colorado real estate [2] from a Colorado resident and where [3] defendant traveled to Colorado to view the real estate, [4] executed the contract in Colorado, and [5] benefitted from contractual terms providing significant protections under Colorado law).

Without some activities that were "purposefully directed" at Colorado, the mere fact that Defendants acquired a partial interest in a contract with a Colorado resident cannot suffice. *See SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1203 (D. Colo. 2002) ("[T]he law is clear that a party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum."); *New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 614 (Colo. Ct. App. 2003) ("When the only alleged basis for jurisdiction is a contract between a resident plaintiff and a nonresident defendant, the necessary minimum contacts are not present to confer personal jurisdiction over such a defendant."). Such a conclusion is particularly inevitable where, as here, (1) the contract concerns rights and interests in land located outside of the forum state, and (2) the interest in the contract was not even purchased from a forum resident. *See generally Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) (rejecting rule that would impute assignor's forum contacts to assignee as violative of established norms of due process).

Consequently, the only remaining question is whether the May 2006 meeting between Defendant Evergreen's employees and Mr. Grynberg suffices to support specific jurisdiction. I find that it does not. As Plaintiff spins the facts, Defendant Evergreen's representatives "came to Colorado to discuss settlement of the case before it was filed."[5] (Pl.'s Resp. at 8.) While it has been said that "even a single contact is sufficient to sustain jurisdiction," such contact only suffices "where the cause of action *arose out of* that contact." *Marquest Med. Prods., Inc. v. EMDE Corp.*, 496 F. Supp. 1242, 1248 (D. Colo. 1980) (emphasis added). It would be an absurd exercise in circular logic to say that a cause of action "arose out of" a single appearance in a forum state targeted at resolving the dispute underlying the cause of action. *Cf. Ruggieri v. Gen. Well Serv., Inc.*, 535 F. Supp. 525, 532 (D. Colo. 1982) ("[I]f a defendant participates . . . in contract negotiations with people in the forum state and then soon executes the agreed-on contract, he will be deemed to have transacted business in the state and be subject to its court's jurisdiction."). Moreover, even when considered together with Plaintiff's other asserted links between Defendant Evergreen, the Farmout Agreement, and the state of Colorado, the absence of meaningful activities purposefully directed at the forum state is so patent that it is difficult to characterize Plaintiff's response brief as anything other than frivolous posturing.

For all the reasons stated above, and given the totality of the circumstances, it would not comport with notions of due process to hale Defendant Evergreen or Defendant Reavis into a Colorado court on the basis of their attenuated and very limited contacts with Colorado, which do

---

[5]It appears that this assertion takes substantial interpretative liberty with Mr. Grynberg's opaque affidavit testimony concerning the May 2006 meeting. *See Facts* § 2b, *supra.*

not rise to the level of minimum contacts as contemplated in the case law. Consequently, the court cannot exercise specific jurisdiction over Defendants. The proper course of action is dismissal without prejudice. *See* 5B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1351, at 313 (3d ed. 2004).

### *3. Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. Defendant Evergreen's motion (#3) is GRANTED.

2. Defendant Reavis' motion (#21) for oral argument is DENIED as moot.

3. The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff, dismissing the case without prejudice for lack of personal jurisdiction. Defendants may have their costs by filing a bill of costs within eleven days of the date on which this order is filed.

Dated this 2nd of May, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge